TISDALE LUMBER COMPANY, Appellant, *v.* MEDTRADCO REALTY COMPANY, INC., and Others, Respondents.

Second Department, December 11, 1925.

Liens — mechanic's lien — contract provided for payment " 50% when Rough enclosed is $567.50 and extras "— verdict in favor of defendants that plaintiff did not furnish material to entitle it to first payment is contrary to evidence — judgment for defendants reversed.

In an action to foreclose a mechanic's lien for material furnished for the construction of two houses erected by defendants on their own lands, under a contract which provides for payment " As building progresses 50% when Rough enclosed is $567.50 and extras " in which the defendants contended that the plaintiff had not furnished the materials necessary to entitle it to the first payment under the contract, the verdict of a jury in favor of the defendants is against the weight of the evidence.

The plaintiff was entitled to the amount stipulated as soon as the building was rough inclosed, and not to fifty per cent of the value of the material furnished at that time.

APPEAL by the plaintiff, Tisdale Lumber Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 20th day of March, 1925, upon the decision of the court rendered after a trial at the Kings Special Term, and also from an order entered in said clerk's office on the same day, denying plaintiff's motion for a judgment of foreclosure in the sum of $1,000.

*Easton S. Bacon* [*Leonard G. McAneny* with him on the brief], for the appellant.

*Max Shlivek,* for the respondents.

Jaycox, J.:

This action was brought to foreclose a mechanic's lien. The plaintiff under a contract with the defendants furnished lumber for the erection of two houses erected by the defendants on their lands. The contract between the parties is evidenced by several writings, but it is agreed that they constitute one contract. It is provided in the writings in relation to the rough lumber that payments are to be made as follows: " As building progresses 50% when Rough enclosed is $567.50 and extras 50% when Brown plaster is $567.50 and extras. Extra material to be paid for with each payment." Pursuant to said contract the plaintiff furnished materials to the value of $1,158.46, and then disagreements occurred. The plaintiff claims that it had furnished the necessary materials to bring the buildings to the rough inclosure stage and that it was entitled to be paid $567.50. The defendants dispute this and claim that the plaintiff had failed to furnish the necessary materials. The dispute centered about the actual furnishing of materials. The defendants did not pay and the plaintiff would not furnish material until paid. Thereupon plaintiff filed a mechanic's lien and this suit is brought to foreclose the same. The defendants pleaded a counterclaim for an alleged excess in the cost of the lumber purchased to complete the buildings, but upon the trial this was abandoned. The only controverted question was, did the plaintiff furnish the necessary material to entitle it to the first payment? This question was decided in favor of the defendants and judgment entered dismissing the complaint.

Naturally, upon a contract like this, all the lumber was not delivered at one time. It would have been impossible for plaintiff to do so and equally impossible for defendants to care for it if delivered. It was undoubtedly the desire of both parties that the materials should be delivered as the exigencies of the work required. The materials that were first needed were to be delivered first. Apparently the plaintiff did not deliver materials as rapidly as the defendants desired, and interviews were had and correspondence passed between the parties in relation thereto. On May 11, 1922, the defendants wrote the plaintiff, " the amount of 3x8 beams that are needed to complete the roof tier is forty-seven (47). 2x6 28–12. The bridging, furring, pine facia, soffit, bed moulding and sufficient roofers to cover roofs." This letter was written by Mr. Martin, the secretary of the Medtradco Realty Company,

Inc.  On the 15th day of May, 1922, the plaintiff wrote the defendant company that it had shipped the forty-seven three by eight beams, forty-one of them being twenty feet long and six, eighteen feet long.  The receipt of these is not disputed and no further mention is made at any time of any of the items set forth in the letter of May 11, 1922, but the roofers.  I think it can be conclusively assumed that all the items but the roofers were delivered.  It is true that when Mr. Martin was on the stand he testified that the two by six rafters for the porches had not been furnished.  The letter of May 11, 1922, above quoted, sets forth, " 2x6 28–12."  On May 13, 1922, Mr. Martin receipted for " 28 — 2x6 — 12 Fir," and as those are the only ones of those dimensions mentioned in the contract it is quite conclusively established that the plaintiff complied with the contract in that respect.  It is true that the contract does mention four other two by six's, fourteen feet in length, and I think it is the natural inference that they had already been delivered.  But, whether they had or not, the order for them is specifically canceled in defendants' letter of May 22, 1922.  In so far as the evidence shows, the following is what transpired in relation to the " roofers."  As above set forth, on May 11, 1922, the defendants wrote that they were short " sufficient roofers to cover roofs."  On May 13, 1922, Mr. Martin receipted for 3,000 feet of roofers.  On the same day he wrote the plaintiff that enough roofers had not been delivered, and on May 31, 1922, the plaintiff delivered 1,000 feet of roofers for which Mr. Martin receipted.  The contract between the parties contains this provision: " It is further agreed that the Tisdale Lumber Company shall furnish with each load of material a ticket in duplicate; the duplicate to be left on the job by the driver and the original to be signed and returned.  This ticket when signed shall constitute proof of delivery of items enumerated thereon."  On May 16, 1922, the defendants wrote the plaintiff: " We call your attention to one of the reasons why the roofers will not cover, is that you have not delivered the quantity that the ticket calls for ' 3000 ft. 6¼ rfg.'  The fact is the roofers delivered are 5¼ and 5½ face and not 6¼ as marked on ticket.  The items enumerated on delivery ticket do not total 3,000 square feet."  On May 22, 1922, the defendant company wrote that it appeared from a conversation with the plaintiff's representative that " the misunderstanding as to the shortage on roofers and ceiling arises over the clause ' we assume only waste in milling the tongue and groove, making the face 5½″ instead of 6¼″ as marked on ticket.'  On 3,000 square feet this amounts to about 500 square feet as I figure the quantity.  Thus making a shortage of that amount."  One thousand feet more

of the roofers were delivered May 31, 1922, as stated above. Assuming these were all the deliveries made of roofers, then 2,000 feet were not delivered according to plaintiff's measurements. The defendants claimed very much more, but when defendant company purchased the amount it claimed was necessary to finish the contract it purchased 2,000 feet, thus showing that the plaintiff's measurements were correct. Of course, the fact that defendants purchased 2,000 feet of roofers does not show that those roofers were necessary to bring the building to the inclosed stage.

Now, to take up the question of whether the building had reached the " rough enclosed " stage. On June 10, 1922, the defendant company wrote the plaintiff: " Several times we have requested you to inform us as to what credit we are entitled to receive for the material you have failed to deliver. We again make that request; you will please inform us by return mail how much credit we are entitled to receive for the materials you have failed to deliver. Owing to the fact that you have welched on your agreement, the sooner you give us this statement, itemized in detail, the quicker you get your money. Your money is waiting for you, all that is required is the proper adjustment." On June 20, 1922, said defendant's secretary had an interview with Mr. Tisdale of the plaintiff corporation. Mr. Tisdale testified that Mr. Martin told him the buildings were rough inclosed but declined to pay him the amount specified in the contract. Mr. Martin offered him $389 with some deductions. A Mr. Bossler, in plaintiff's employ, says Mr. Martin said the building was rough inclosed but declined to pay $567.50; said he would pay only fifty per cent of the amount of the lumber delivered, less some claims for credits. Mr. Martin, interrogated by the court, testified that he offered Mr. Tisdale one-half of $785 (the amount of lumber then delivered), but he refused to accept it. Martin demanded a guaranty that the contract would be completed without delay. Tisdale declined to give it. Mr. Martin continues: " So I asked him what assurance would he give me that if I gave him *his money* he would carry out his contract, and he said, ' None.' He said he wouldn't talk until he had received $567.50. I said: ' If I give you $567.50, what will you do? ' He said: ' I refuse to talk to you until I get $567.50.' I said: ' I will pay you $567.50 if you will give me an assurance that you will carry through your contract without delay to me.' So he refused, and I left his office." Under the guidance of counsel he says he believes he told Mr. Tisdale the buildings were not rough inclosed. This is entirely out of harmony with the testimony quoted above. To corroborate him Mr. Rosenzweig was called and he says Mr. Martin told Mr. Tisdale " he was willing to pay him the money if

he would give him assurance that he would deliver the balance of the material to bring him up to his enclosure." Apparently the witness could not recall what Mr. Martin had testified to, but " he had an unerring instinct for the jugular." The next day after this interview Mr. Martin wrote the plaintiff setting forth his recollection of his interview, and the substance of the interview as stated in the letter is the same that he testified to upon the stand, and nowhere in it does he state that the building had not reached a stage which entitled the plaintiff to its first payment. The defendants' attitude and the reason for it are shown in the last clause of this letter, which reads as follows: " We again make you the offer of 50% of your lumber statement after deducting whatever charges are agreed upon. You to give us a guarantee that you will carry out your contract without delay to us." The defendant's idea was that when the building was rough inclosed the amount then payable was fifty per cent of the amount of the lumber which had been delivered. This idea was erroneous. The amount demanded by plaintiff was due, and plaintiff was not required to make further deliveries until that amount was paid.

Findings of fact 6, 7, 8 and 9 should be reversed as contrary to the evidence, and the conclusion of law annulled. This court should make proper findings to sustain a judgment in favor of the plaintiff. The judgment should be reversed on the facts, with costs, and judgment entered in favor of the plaintiff, with costs.

KELLY, P. J., RICH, KELBY and YOUNG, JJ., concur.

Judgment reversed on the facts as contrary to the evidence, with costs, and judgment directed for plaintiff, for the relief demanded in the complaint, with costs. Settle order and findings in accordance with opinion, on notice.